IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| ELLEN KENDRICK, | No. 84318-4-I |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JOSHUA DAVID SANDERSON, | |
| Appellant. | |

BOWMAN, J. — Joshua Sanderson appeals a one-year domestic violence (DV) protection order (DVPO) protecting his ex-wife Ellen Kendrick and their two children. We affirm.

FACTS

Kendrick and Sanderson divorced in June 2019 and share custody of their two children. In May 2020, after a telephone communication issue with the children, Sanderson came to Kendrick's home and tried to force his way in, injuring her. Because of that incident, Kendrick sought a DVPO. The King County Superior Court issued a one-year DVPO. The order also protected the children and limited Sanderson's residential time to one four-hour professionally supervised visit per week. In June 2021, Kendrick sought to renew the DVPO. The parties then entered a series of agreed short-term orders extending the DVPO until January 2022 when it expired.

In February 2022, Kendrick sought another DVPO. She submitted an affidavit with her petition and said that she accidentally let the first order expire. Kendrick described the May 2020 DV incident and explained that she is still afraid of Sanderson. Kendrick said that she believes the only reason she and the children were safe was because there was a protection order in place. She explained that the first DVPO mandated professionally supervised visits between Sanderson and the children. And since it expired, so did that requirement. Kendrick said she moved to modify her parenting plan to allow Sanderson only professionally supervised visits with the children, but that action is pending.

Kendrick stated that even though a professional supervises Sanderson's time with the children, the visits "have not been without issues." She described a visit on January 23, 2022 where Sanderson had "an inappropriate and angry exchange with the supervisor in front of the children." The incident prompted the supervisor to pull Kendrick aside "to discuss the visit . . . because she was concerned." The supervisor explained that Sanderson confronted a waiter at a restaurant because the waiter tried serving them an extra pizza, and when she tried to intervene, he "snapped" at her. After the waiter left their table with the extra pizza, Sanderson told the supervisor "not to intervene in his interactions with others" because it "oversteps her place." The supervisor described the interaction as "uncomfortable" and resulted in the rest of the dinner having a "quieter . . . mood."

Kendrick also attached to her declaration her victim impact statement (VIS) from the criminal assault case that stemmed from the May 2020 incident.

Her VIS describes a history of verbal abuse, including Sanderson berating her and the children, sending her aggressive and threatening messages, and engaging in "unprovoked verbal confrontations" with third parties, including friends, colleagues, strangers, health care providers, and school administrators.

Sanderson objected to the new DVPO. In his declaration, Sanderson said that Kendrick's description of the May 2020 incident was "false." While he recognized that there was an incident at Kendrick's home in May 2020, he explained that "no intentional assault occurred." And he explained that he has "done nothing in the past two years that could objectively inflict the fear of imminent physical harm in a reasonable person in [Kendrick]'s circumstances." Sanderson also said that the supervisors' visit reports show that the children do not need protection from him and that it would not be in their best interests to continue supervised visits.

In May 2022, a King County Superior Court commissioner held a hearing. It granted Kendrick's request and issued a new one-year DVPO.[1] Sanderson moved for revision, which a superior court judge denied. Sanderson appeals.

ANALYSIS

Sanderson argues the court erred by issuing a new DVPO because he committed no new act of DV. We disagree.

A court commissioner's decision is subject to revision by the superior court. RCW 2.24.050. On appeal, we review the superior court's decision, not

---

[1] The new DVPO was set to expire on May 12, 2023 while this appeal was pending. But the parties agreed to extend the DVPO until June 16, 2023. Because the DVPO is still in effect, the claim is not moot.

the commissioner's. In re Marriage of Williams, 156 Wn. App. 22, 27, 232 P.3d 573 (2010).

We review a superior court's grant of a DVPO for an abuse of discretion. Maldonado v. Maldonado, 197 Wn. App. 779, 789, 391 P.3d 546 (2017).[2] A court abuses its discretion if it bases its decision on untenable grounds or for untenable reasons. Id. A court's decision "is based on untenable grounds if the factual findings are unsupported by the record," and it "is based on untenable reasons" if the court applies an incorrect standard or the facts do not meet the requirements of the correct standard. In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

We review a superior court's findings of fact for substantial evidence, deferring to the trier of fact on questions of witness credibility, conflicting testimony, and persuasiveness of the evidence. Knight v. Knight, 178 Wn. App. 929, 936-37, 317 P.3d 1068 (2014). "Evidence is substantial if it is sufficient to persuade a fair-minded, rational person of the declared premise." Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). We will not disturb a trial court's findings supported by substantial evidence, even if there is conflicting evidence. Id.

---

[2] Sanderson argues we should review his claim de novo. We apply de novo review when the record is only written and " 'the trial court has not seen nor heard testimony requiring it to assess the credibility or competency of witnesses, and to weigh the evidence, nor reconcile conflicting evidence.' " Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wn.2d 243, 252, 884 P.2d 592 (1994) (quoting Smith v. Skagit County, 75 Wn.2d 715, 718, 453 P.2d 832 (1969)). But here, the court reconciled conflicting factual declarations between Kendrick and Sanderson. So, we apply an abuse of discretion standard.

The Domestic Violence Prevention Act (DVPA), former chapter 26.50 RCW,[3] authorizes a victim of DV to petition the court for an order of protection. Former RCW 26.50.030 (2005). The petition must "allege the existence of [DV]" and must include "an affidavit made under oath stating the specific facts and circumstances from which relief is sought." Former RCW 26.50.030(1). "DV" means:

> (a) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, sexual assault, or stalking as defined in RCW 9A.46.110 of one intimate partner by another intimate partner; or (b) physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, sexual assault, or stalking as defined in RCW 9A.46.110 of one family or household member by another family or household member.

Former RCW 26.50.010(3) (2019). "The harm caused by [DV] can be physical or psychological." Rodriguez v. Zavala, 188 Wn.2d 586, 596, 398 P.3d 1071 (2017).

A petitioner must support their request for a DVPO by a preponderance of the evidence. City of Tacoma v. State, 117 Wn.2d 348, 351-52, 816 P.2d 7 (1991); Reese v. Stroh, 128 Wn.2d 300, 312, 907 P.2d 282 (1995) (Johnson, J., concurring). So, the court must find that it was more likely than not that DV occurred. See In re Marriage of Freeman, 169 Wn.2d 664, 672-73, 239 P.3d 557 (2010).

Here, the trial court determined that Kendrick met her burden for issuance of a DVPO by showing she had a "current fear based on actions of [Sanderson]

---

[3] The legislature repealed chapter 26.50 RCW in 2021, effective July 1, 2022. LAWS OF 2021, ch. 215, § 170.

since entry of the [first] DVPO . . . , including continued denial of the [DV] incident in 05/2022 and behaviors exhibited during visitation." The court explained that when "these factors are considered along with the circumstances that led to the [first] DVPO, the court finds the current fear reasonable."

Sanderson argues that the trial court erred because he committed no recent acts of physical violence.[4] But nothing in the DVPA requires a recent act of DV to issue a DVPO. Spence v. Kaminski, 103 Wn. App. 325, 333-34, 12 P.3d 1030 (2000). Sanderson also suggests that res judicata[5] precludes the court from considering his past act of DV because that incident supported the first DVPO. But we rejected Sanderson's res judicata argument in Muma v. Muma, 115 Wn. App. 1, 6, 60 P.3d 592 (2002).

In Muma, the petitioner sought a new DVPO protecting her and her children from her ex-husband after an earlier protection order expired. 115 Wn. App. at 4. The trial court granted the new DVPO based on the couple's history of DV and the petitioner's assertion that she still feared the respondent. Id. at 4, 6. On appeal, we rejected the ex-husband's argument that the doctrine of res judicata barred the new order. Id. at 6. We explained that the purpose of res

---

[4] Sanderson also says the court confused the standard for issuance of a DVPO with the standard for renewal of a DVPO when it focused on Kendrick's "current fear." He is incorrect. Under the DVPA, the court "shall grant the petition for renewal unless the respondent proves by a preponderance of the evidence that the respondent will not resume acts of [DV] against the petitioner or the petitioner's children or family or household members when the order expires." Former RCW 26.50.060(3) (2020). Nothing in that statute requires a showing of "current fear."

[5] The doctrine of res judicata ensures the finality of decisions by barring relitigation of the same claim where a subsequent claim involves the same subject matter, cause of action, persons and parties, and quality of persons for or against the claim made. See Pederson v. Potter, 103 Wn. App. 62, 67, 11 P.3d 833 (2000).

judicata is to ensure the finality of judgments. Id. And because the petitioner showed she still feared her ex-husband, the DV issues had "not been fully litigated to their finality." Id. at 6-7. We explained that the legislative intent of the DVPA is to prevent acts of DV and "refuse[d] to construe the law so as to require that [the petitioner] wait until [the respondent] commits further acts of violence against her or their children in order to seek an order for protection." Id. at 7.

Here, the trial court found that Kendrick demonstrated "a current reasonable fear" that when coupled with Sanderson's previous act of DV warranted issuance of a new DVPO. Like the parties in Muma, the DV issues between Kendrick and Sanderson had not been fully litigated. As a result, res judicata did not preclude the court from issuing the new DVPO.

Sanderson contends that Muma is distinguishable because it involved an "extensive list of horrific acts of [DV]," which "provided sufficient context for the fear." He suggests that substantial evidence does not support finding that Kendrick's assertion of fear was "objectively reasonable." But Kendrick's petition supports the trial court's finding that she still fears Sanderson. Kendrick's declaration describes Sanderson forcing his way into her home and injuring her. It also describes a history of verbal abuse toward her and others. And it describes a recent confrontation during a supervised visit consistent with the prior verbal abuse. Together, the evidence is enough to persuade a fair-minded, rational person that Kendrick had a "current reasonable fear" of Sanderson. And as much as Sanderson's declaration contradicts Kendrick's assertions of DV, we defer to the superior court's determinations on the persuasiveness of the

evidence, witness credibility, and conflicting evidence. <u>Snyder v. Haynes</u>, 152 Wn. App. 774, 779, 217 P.3d 787 (2009). The court did not abuse its discretion in issuing the DVPO.

Kendrick seeks attorney fees and costs under former RCW 26.50.060(1)(g) (2020) for responding to this appeal. We may award attorney fees where allowed by statute, rule, or contract. <u>Aiken v. Aiken</u>, 187 Wn.2d 491, 506, 387 P.3d 680 (2017). And if attorney fees are allowable below, the prevailing party may recover those fees on appeal. <u>Id.</u> (citing RAP 18.1). Under former RCW 26.50.060(1)(g), a court may "[r]equire the respondent to pay the administrative court costs and service fees . . . and to reimburse the petitioner for costs incurred in bringing the action, including reasonable attorneys' fees." We grant Kendrick's request subject to compliance with RAP 18.1.[6]

We affirm the DVPO.

_____
Birk, J

WE CONCUR:

_____
Díaz, J.

_____
Hazelrigg, A.C.J

_____

[6] Sanderson also seeks costs under RAP 14.2. Because he does not substantially prevail in this appeal, we deny his request.